Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| FIVE DEVELOPMENT CORPORATION Y OTROS<br><br>Demandante-Apelante<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO, INC.<br><br>Demandado-Apelado | KLAN202300878<br><br><br>Consolidado con | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: SJ2020CV01682 (901)<br><br>Sobre: Incumplimiento de Contrato |
| FIVE DEVELOPMENT CORPORATION Y OTROS<br><br>Demandante-Apelado<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO, INC.<br><br>Demandado-Apelante | KLAN202300893 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: SJ2020CV01682 (901)<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y la jueza Rivera Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

Comparece ante este tribunal apelativo Five Development Corporation y otros[1] (los apelantes-apelados) mediante el recurso de apelación solicitándonos que revoquemos la *Sentencia Parcial* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 30 de junio de 2023, notificada el 5 de julio siguiente. A su vez, acude ante esta *Curia* el Banco Popular de Puerto Rico

---

[1] La parte apelante está compuesta por veintitrés (23) corporaciones adicionales, el Sr. Rafael Pérez Matos (señor Pérez Matos) y el matrimonio compuesto por Rafael Pérez Matos y Celene Diez Braschi (matrimonio Pérez -Diez).

(BPPR o el Banco) peticionándonos que modifiquemos la referida *Sentencia Parcial* a los únicos efectos de que se desestimen también las primera y segunda causas de acción de la demanda instada en su contra.[2]

En dicho dictamen, el foro primario declaró parcialmente *Ha Lugar* a la *Moción de Sentencia Sumaria Parcial* presentada por el BPPR desestimando solamente la tercera causa de acción de la demanda. Subsistiendo así las causas de acción primera, segunda, cuarta, quinta y sexta únicamente respecto a los hechos posteriores a la firma del acuerdo de moratoria.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I.**

El 24 de febrero de 2020, Five Development Corporation, más otras veintitrés (23) corporaciones, el señor Pérez Matos y el matrimonio Pérez-Diez, presentaron una *Demanda* sobre daños y perjuicio, incumplimiento de contrato, dolo, mala fe contractual y responsabilidad del prestamista ("*Lender's Liability*") en contra del BPPR y una compañía aseguradora de nombre desconocido.[3] En síntesis, alegaron haber adquirido el 15 de agosto de 2007 dos (2) préstamos por $151,000,000 del extinto Westernbank y que estos fueron adquiridos por el BPPR mediante transacción con la FDIC (Federal Deposit Insurance Corporation). Arguyeron que el BPPR, actuando de mala fe, <u>decidió unilateralmente</u> que ellos tendrían que <u>renegociar y restructurar los préstamos</u> para subir los intereses y acortar los vencimientos. Así, comenzó una campaña de presión y hostigamiento para inducirlos <u>a aceptar un incremento en los intereses y un vencimiento menor</u> al pactado con el Westerbank.

---

[2] El 10 de octubre de 2023 emitimos una *Resolución* consolidando *motu proprio* los dos recursos.

[3] En el tracto procesal se detallan algunos extractos de los narrados en el caso KLAN202300797 consolidado KLCE202300995 cuya *Sentencia* emitimos el 13 de septiembre de 2023.

Ante la deteriorada relación con el Banco, los apelantes comenzaron a buscar financiamiento con Bixby Bridge Capital para comprar los préstamos adeudados por un único pago de $41.2 millones. Sin embargo, estando en negociaciones, el 31 de julio de 2019 el Banco los vendió a Condado 6, LLC.

En atención a lo alegado, los apelantes incluyeron en su demanda las siguientes seis (6) causas de acción: Primera- Actos ilícitos, dolo y maquinaciones insidiosas del Banco; Segunda- Coerción "Duress" Económica; Tercera- Incumplimiento de contrato y responsabilidad del prestatario o "Lenders Liability"; Cuarta- Responsabilidad Civil Extracontractual; Quinta- En Reclamación de Daños y Perjuicios a favor de los demandantes que son personas naturales; y Sexta- Costas y Honorarios de Abogado- Temeridad. Acorde con estas solicitaron varias compensaciones y resarcimiento de perjuicios ocasionados por la conducta dolosa, torticera, negligente y engañosa del Banco; así como $1,000,000 por los daños y angustias mentales para cada uno de los tres demandantes naturales, más costas e intereses y honorarios de abogado.

El 20 de diciembre de 2021, el BPPR presentó su *Contestación Enmendada a Demanda y Reconvención*.[4] En síntesis, negó las alegaciones hechas en su contra, levantó varias defensas afirmativas, e incluyó una reconvención donde se incluyeron tres causas de acción, a saber: Sentencia Declaratoria e incumplimiento de los demandantes-reconvenidos con el pacto de no demandar y las renuncias y relevos a favor de BPPR; Daños como producto de actuaciones de mala fe; y Daños producto del quebrantamiento de la Doctrina de Actos Propios.

Entre sus respuestas a la demanda especificó que, el 13 de diciembre de 2013, las partes suscribieron el *"Amended and*

---

[4] Véase el Apéndice del recurso, a las págs. 36-81.

*Restated Credit Agreement*" para restructurar y consolidar las obligaciones de pago de los deudores al amparo de los contratos de préstamo existentes a dicha fecha. Indicó que dicho contrato fue formalizado por las partes libre y voluntariamente, y los apelantes contaron con asesoría legal durante todo el proceso de negociación y firma de este.[5] Asimismo, apuntaló que en el referido convenio se incluyó una renuncia y relevo de reclamaciones por los apelantes a favor del Banco. Por otro lado, arguyó que no tenía deber ni obligación de buscar el consentimiento de los apelantes antes de transferir los préstamos a un tercero.

El 13 de enero de 2022, los apelantes presentaron su *Réplica a la Reconvención,* en la que, en síntesis, negaron las alegaciones hechas en su contra. Levantaron varias defensas afirmativas como que existió un desnivel en las prestaciones que "le permitió al Banco aprovecharse de ellos para imponerle unos relevos, cláusulas leoninas y estrangularlos hasta que no tuvieran otra alternativa que doblegarse y aceptar las exigencias del Banco en contra de su voluntad."[6]

Así, el 21 de julio de 2022, el BPPR presentó una *Moción de Sentencia Sumaria Parcial.* En la misma propuso cincuenta y ochos (58) hechos materiales incontrovertidos los que a su entender resultan suficientes para la desestimación sumaria de la primera, segunda, tercera, quinta, y sexta causas de acción incluidas en la demanda.[7] En especial, fundamentó su petitorio en que los apelantes firmaron múltiples acuerdos de renuncia al ejercicio de acciones legales a favor del BPPR. Sobre este punto, reiteró que los apelantes acreditaron que firmaron el "*Amended and Restated Credit Agreement*" sin que mediara fraude, influencia indebida,

---

[5] *Íd.*, a la pág. 60.
[6] *Íd.*, a la pág. 303.
[7] *Íd.*, a las págs. 322-334.

presión o coerción de clase alguna y que se otorgó el acuerdo luego de haber obtenido la oportunidad de discutirlo con su representación legal.[8] Asimismo, señaló que en las enmiendas a dicho contrato los apelantes reconocieron expresamente que no poseían reclamación en contra del BPPR y renunciaron a cualquier causa de acción o defensa.[9] También indicó que en el *Acuerdo de Moratoria* firmado el 23 de octubre de 2017 los apelantes recalcaron por quinta vez no tener reclamación, causa de acción o defensa ante el BPPR. Por tanto, arguyó que este acuerdo dispone de las reclamaciones predicadas en los hechos alegados en o antes de esa fecha.[10]

Luego de varios trámites procesales, el 6 de septiembre de 2022, los apelantes presentaron su *Oposición a: "Moción de Sentencia Sumaria Parcial" o en la Alternativa, para que se Posponga su Consideración en Virtud de la Regla 36.6 de las de Procedimiento Civil* en la que solo aceptaron como incontrovertidos los primeros seis (6) hechos propuestos por el Banco.[11] En esta, se opusieron a la desestimación de las causas de acción alegando, entre otros asuntos, que: el Banco no ha contestado el descubrimiento de prueba que se le cursó hace más de dos (2) años, el cual es necesario para probar la conducta imputada en su contra; la validez de los acuerdos de renuncia, en los cuales el BPPR basó su solicitud, está en controversia; y la imputación de haber violado los postulados más básicos de la buena fe no debe ser resuelta sin el beneficio de ver y escuchar la prueba.[12] Además, expusieron que las controversias son: (1) "si el BPPR estaba justificado para presionar a los Demandantes para exigir mediante coacción y presiones indebidas la reestructuración de los préstamos que estaban al día

---

[8] *Íd.*, a la pág. 325.
[9] *Íd.*, a las págs. 336-337.
[10] *Íd.*, a la pág. 336.
[11] *Íd.*, a las págs. 402-444.
[12] *Íd.*, a la pág. 440.

para incrementar sus intereses y acotar sus vencimientos" y (2) si al suscribir el *"Amended and Restated Credit Agreement"* y las Primera, Segunda, Tercera Enmiendas; así como el Acuerdo de Moratoria, lo hicieron voluntariamente y renunciaron a sus derechos.[13] Entre sus súplicas está el que el TPI pospusiera la adjudicación de la moción de sentencia sumaria hasta que se les permita realizar el descubrimiento de prueba.

El 1 de noviembre, el BPPR instó una réplica a dicho escrito señalando que los apelantes no controvirtieron: el lenguaje expreso del *"Amended and Restated Credit Agreement"*, el cual contiene renuncias claras y libres de ambigüedad que disponen de las reclamaciones en su contra; y que firmaron el referido contrato y sus enmiendas mientras contaban con asesoría legal. Por lo que, reafirmaron que los apelantes renunciaron a las acciones que pretenden instar en contra del Banco. Asimismo, apuntaló que la validez del consentimiento no está en controversia, ya que los apelantes han admitido ante el TPI que el caso "no envuelve una reclamación por dolo en el otorgamiento de los contratos", "no envuelve una reclamación de anulabilidad por vicios en el consentimiento" y que "**en ningún momento** se solicita la anulabilidad de los contratos suscritos por los Demandantes."[14] A su vez, el Banco expuso que no se solicitó en su pedido sumario que las renuncias se apliquen en la forma de relevos por *conducta dolosa futura.* Es decir, "solicita en estos momentos hacer efectivas las renuncias que los Demandantes firmaron sobre cualquier reclamación a base de hechos que ocurriesen en o antes de la firma del *Contrato de Préstamo Enmendado* y sus enmiendas- es decir, en torno a actos *previos o contemporáneos* a la firma de estos."[15]

---

[13] *Íd.*, a la pág. 422.
[14] *Íd.*, a la pág. 565. Énfasis en el original.
[15] *Íd.*, a la pág. 567. Itálicas en el original.

Ese mismo día, el Banco presentó su oposición a la petición de los apelantes respecto a que se deje en suspenso la consideración de la moción de sentencia sumaria hasta que culmine el descubrimiento de prueba. En esta moción, se indicó que el foro primario ya había rechazado dicho pedido en la orden notificada el 22 de agosto de 2022, la cual no fue revisada y constituye la ley del caso. Se argumentó, además, que en la Declaración Jurada que anejaron los apelantes a su oposición no identifican asunto alguno sobre el que necesiten hacer descubrimiento de prueba para controvertir los hechos materiales, y estos admiten "que los documentos dicen lo que dicen."[16]

El 3 de noviembre, los apelantes presentaron una réplica consolidada donde refutaron los referidos dos escritos instados por el BPPR. Recalcaron que, en su oposición a la moción dispositiva, establecieron las controversias que deben ser resueltas en un juicio plenario y que el Banco se ha negado a contestar el descubrimiento de prueba cursado.

Evaluados los antedichos escritos, el 30 de junio de 2023, notificada el 5 de julio siguiente, el TPI dictó la *Sentencia Parcial* apelada en la que esbozó cincuenta y cuatro (54) determinaciones de hechos que no están en controversia.[17] Conforme a lo allí determinado, el foro primario declaró parcialmente *Ha Lugar* la *Moción de Sentencia Sumaria Parcial* presentada por el BPPR, solo en cuanto a la desestimación de la causa de acción número tres de la demanda. Asimismo, preservó las causas de acción primera, segunda, cuarta, quinta y sexta únicamente respecto a las reclamaciones que no hayan sido renunciadas en virtud de los relevos consignados en los documentos de préstamos. Al respecto,

---

[16] *Íd.*, a la pág. 586. Esto en referencia a la expresión de la nota al calce 3 de la oposición. *Íd.*, a la pág. 423.
[17] *Íd.*, a las págs. 718-729.

advirtió que dichas causas subsisten en torno a las controversias relacionadas a los hechos posteriores a la firma del acuerdo de moratoria suscrito el 23 de octubre de 2017. A su vez, el foro *a quo* denegó la oposición a dicho petitorio y declaró *No Ha Lugar* a la *Moción de Desglose y Oposición a "Moción para: (1) Notificar copia del Informe Pericial y Currículum Vitae y (2) Suplementar Oposición a* <u>*Moción de Sentencia Sumaria Parcial"*</u> instada por el Banco.

Entre los fundamentos para el dictamen, el foro *a quo* entendió que:[18]

> ...
> Se equivoca la parte demandante en la medida que sostiene que los relevos en este caso son nulos porque implican la renuncia *a priori* de cualquier incumplimiento por parte del BPPR. Lo anterior, puesto que nuestro ordenamiento jurídico no contempla una prohibición absoluta a la renuncia de derechos *a priori* o con anticipación. [...]
> ...
> ...
> Aunque en su *Oposición a: "Moción de sentencia sumaria parcial" [...]*, la parte demandante alegó que su reclamación versa sobre dolo, negligencia y malos tratos por la conducta desplegada por el BPPR posterior al otorgamiento de los documentos de préstamo, ulteriormente, en su *Réplica consolidada a: (1) Réplica a oposición a: Moción de sentencia sumaria parcial [...]* del 3 de noviembre de 2022, precisó que la reclamación responde a la conducta desplegada por el BPPR en el proceso de cumplimiento y ejecución de sus obligaciones, la cual, presuntamente, comenzó con la adquisición de los préstamos en cuestión y culminó con su venta a Condado 6.
> Siendo así, estamos compelidos a determinar la validez *prima facie* de los relevos de responsabilidad suscritos por la parte demandante con posterioridad al 2010, año en que el BPPR advino en la titularidad de los préstamos, y con anterioridad al 23 de octubre de 2017, fecha en que se suscribió el último de los documentos de préstamo, es decir, el acuerdo de moratoria o *"Moratorium, Forbeance and Amendment Agreement"*. Esto así, puesto que cualquier acción para reclamar por conducta dolosa en la que el BPPR pudo haber incurrido durante el tiempo anterior o concomitante a los acuerdos otorgados ya exigible a la fecha en que los mismos fueron suscritos, por lo que fue válidamente renunciada. Sin embargo, empleamos el término *prima facie* en aras de no adelantarnos a una conclusión que amerita mayor abundamiento.
> [...]En lo atinente a su situación particular, la parte demandante sostuvo que el desnivel en las prestaciones le permitió al BPPR aprovecharse e imponerle unas cláusulas leoninas y estrangularla hasta que no tuvo otra alternativa que doblegarse y aceptar esas exigencias en contra de su voluntad.

---

[18] *Íd.*, a las págs. 735-739. Énfasis e itálicas en el original.

No podemos suscribir la contención de la parte demandante por múltiples razones. En primer lugar, según surge del expediente y de la prueba documental apreciada por el tribunal, la parte demandante es un grupo comercialmente sofisticado que se dedica al arrendamiento de propiedades comerciales. Además, la parte demandante aceptó suscribir los documentos de préstamos con el beneficio de ser asistida y orientada por su representación legal. [...]

...

...

Las secciones antes citadas del Contrato de Préstamo Enmendado, junto con otras de similar naturaleza que se hayan consignadas en los subsiguientes documentos de préstamos, dejan de manifiesto que la parte demandante renunció a toda reclamación legal relacionada con los préstamos en cuestión de manera libre, voluntaria e inequívoca. Siendo así, no albergamos duda de que, ante este cuadro fáctico, no surge la disparidad en fuerza que amerita decretar la nulidad de los relevos. Desde esta óptica, entendemos que la parte demandante pudo haber experimentado sensación de coacción ante la amenaza de ser demandada en cobro de dinero o ser sometida a un proceso de quiebra involuntaria. Sin embargo, que una parte advierta de su intención de ejercer una obligación legalmente exigible no es motivo de coacción. Sobre este particular, como bien señala el BPPR, es un principio hartamente conocido en nuestro ordenamiento jurídico que "la amenaza de ejercer un derecho no es sinónimo de intimidación." (cita omitida). Por lo hasta aquí discutido, procede sostener la efectividad de las cláusulas de relevo antepuestas como defensas por el BPPR dado que las mismas son claras, libres de ambigüedad, válidas y exigibles.

Ahora bien, lo anterior, no sin antes aclarar que subsisten varias de las causas de acción que el BPPR pretende que se desestimen en su totalidad a base de los relevos en cuestión. Nos referimos específicamente a las causas de acción primera, segunda, quinta y sexta de la *Demanda*, las cuales no solo versan sobre reclamaciones previamente renunciadas por la parte demandante en los documentos de préstamo, sino que en ellas se reclama por el BPPR haber vendido los préstamos en cuestión a un tercero, estando en negociaciones con la parte demandante. Dicha venta ocurrió el 31 de julio de 2019, es decir, con **posterioridad** al acuerdo de moratoria suscrito el 23 de octubre de 2017. Por lo tanto, no podemos avalar la alegación de que dichas causas deben ser desestimadas por lo contemplado en las cláusulas de relevo. Como mencionamos anteriormente, la renuncia de derechos, en general, no se presume, y es de interpretación estricta y, a estas alturas, no se ha puesto al tribunal en condición de hacer extensivos los relevos a las reclamaciones que tratan sobre la venta de los préstamos en cuestión.

Sobre este particular, hacemos hincapié en que la renuncia a reclamar por acciones relacionadas con el cumplimiento de las obligaciones prestatarias no es sinónimo de una renuncia a reclamar por cualquier responsabilidad que pudo generar la venta de los préstamos a un tercero. [...]

El 20 de julio de 2023, los apelantes presentaron una *Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales y Conclusiones de Derecho*. En esta, adujeron que el TPI no consideró la Declaración Jurada y el informe pericial que refuta las determinaciones que hiciera el foro primario en su dictamen. Los cuales, no fueron controvertidos por el Banco. Asimismo, propusieron ochenta y seis (86) hechos incontrovertidos que surgen de la Declaración Jurada más otros adicionales del informe pericial. El BPRR se opuso aduciendo que la Declaración Jurada era inadmisible, ya que las declaraciones que contiene no están basadas en el conocimiento personal de los suscribientes. Además, expresó que ninguna de las pretensiones de los apelantes refuta los hechos esenciales y materiales que fundamentan el dictamen.

Ese mismo día, el Banco instó una *Moción de Reconsideración Parcial* en la que le solicitó al foro primario la desestimación de la primera y segunda Causas de Acción de la demanda. Esto, debido a que en las mismas los apelantes solicitan remedios contra el Banco a base de la reestructuración de los préstamos que ocurrió en el 2013, lo cual constituye materia abarcada por las renuncias que hizo efectivas el tribunal en la Sentencia. Los apelantes se opusieron a este pedido indicando que, en ambas causas de acción, se reclaman daños por hechos ocurridos entre los años 2017 y 2019.

Finalmente, el 10 de agosto de 2023, notificada el 11 del mismo mes y año, el TPI emitió una *Resolución*, mediante la cual declaró *No Ha Lugar* a ambas mociones de reconsideración.

Inconformes con dicha determinación, los apelantes acudieron ante este foro intermedio mediante un recurso de *Apelación* (caso KLAN202300797). También en desacuerdo, el BPPR acudió mediante un recurso de *Certiorari* (caso KLCE202300995), el cual fue acogido como uno de apelación. No obstante, se conservó su designación alfanumérica.

En la *Sentencia* que dictamos el 13 de septiembre de 2023 dispusimos que el TPI no atendió en la *Resolución* de 10 de agosto de 2023 la solicitud de determinaciones de hechos adicionales presentada por los apelantes, por lo que determinamos que los recursos de apelación fueron presentados de forma prematura.

Así, una vez recibido el Mandato, el 25 de septiembre de 2023, notificada el próximo día, el TPI dictó una *Resolución Enmendada*, en la que resolvió las reconsideraciones; así como la solicitud de determinaciones de hechos adicionales y conclusiones de derecho instada por los apelantes.

Todavía en desacuerdo, los apelantes acuden ante esta *Curia* mediante el recurso de apelación de epígrafe (KLAN202300878) imputándole al tribunal primario haber incurrido en los siguientes errores:

> ERRÓ EL TPI AL RESOLVER MEDIANTE SENTENCIA SUMARIA LA CONTROVERSIA SOBRE LA VALIDEZ DE LOS RELEVOS DE RESPONSABLIDAD, OBVIANDO QUE LA LEY DEL CASO DE LA RESOLUCIÓN DE 10 DE SEPTIEMBRE DE 2021, ASÍ COMO LA JURISPRUDENCIA APLICABLE, REQUIEREN QUE LOS ELEMENTOS SUBJETIVOS DE INTENCIÓN Y PROPÓSITOS MENTALES, COMO LO SON LA DISPARIDAD EN LA FUERZA DE NEGOCIACIÓN ENTRE LOS DEMANDANTES Y EL BPPR, SEAN DIRIMIDOS EN UN JUICIO PLENARIO Y CON LA OPORTUNIDAD DE COMPLETAR EL DESCUBRIMIENTO DE PRUEBA.

> SEGUNDO: ERRÓ EL TPI AL NO TOMAR EN CONSIDERACIÓN EL DESBALANCE ENTRE LAS PARTES CONTRATANTES, PARTICULARMENTE EL GRAN PODERÍO ECONÓMICO DEL BPPR FRENTE A LOS DEMANDANTES Y ESPECÍFICAMENTE EL HECHO DE QUE EN PUERTO RICO SOLO HABÍA 3 BANCOS COMERCIALES, LO CUAL LIMITABA SIGNIFICATIVAMENTE LA POSIBILIDAD DE QUE LOS DEMANDANTES PUDIERAN ACUDIR A OTRA INSTITUCIÓN BANCARIA PARA OBTENER O RENEGOCIAR EL FINANCIAMIENTO QUE EXIGÍA EL BPPR. EN OTRAS PALABRAS, EL BPPR APROVECHÓ ESAS CIRCUNSTANCIAS PARA PRESIONAR A LOS DEMANDANTES A RENEGOCIAR UN PRÉSTAMO QUE ESTABA AL DÍA.

> TERCERO: ERRÓ EL TPI AL EMITIR UNA SENTENCIA PARCIAL SUMARIAMENTE, SIN CONSIDERAR NI INCLUIR LAS DETERMINACIONES SOBRE HECHOS MATERIALES QUE SE DESPRENDEN DEL EXPEDIENTE, INCLUYENDO LA DECLARACIÓN JURADA DE LOS DEMANDANTES Y EL INFORME DEL

PERITO DE LOS DEMANDANTES, QUE DEMUESTRAN QUE EL BPPR CAUSÓ DAÑOS A LOS DEMANDANTES INTENCIONALMENTE.

CUARTO: ERRÓ EL TPI AL DESESTIMAR SUMARIAMENTE GRAN PARTE DE LA DEMANDA, BASÁNDOSE EN LA VALIDEZ DE UNOS RELEVOS, CUANDO LA PROPIA CLÁUSULA DE RELEVO UTILIZADA NO APLICA EN CASOS DE NEGLIGENCIA CRASA Y CONDUCTA INTENCIONAL. DICHA EXCEPCIÓN LEE SEGÚN A CONTIUACIÓN: *"**EXCEPT** TO THE EXTENT THAT ANY SUCH CLAIMS, LIABILITIES, OBLIGATIONS, DEBTS, CAUSES O FACTION, DEFENSES, COUNTERCLAIMS, AND SETOFFS ARE FOUND IN A FINAL, NON-APPEALABLE JUDGMENT OF A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM THE GROSS **NEGLIGENCE** OR **WIILFUL MISCONDUCT** OF THE APPLICABLE RELEASEE."*

También insatisfecho, el BPPR acude ante este foro revisor mediante el recurso de apelación de epígrafe (KLAN202300893) imputándole al foro *a quo* haber cometido el siguiente error:

ERRÓ EL TPI AL NO DESESTIMAR LA PRIMERA Y SEGUNDA CAUSAS DE ACCIÓN DE LA *DEMANDA* A BASE DE LA *MOCIÓN DE SENTENCIA SUMARIA PARCIAL* DE[L] BPPR.

El 6 de octubre de 2023, emitimos una *Resolución* concediéndole al Banco el término de treinta (30) días para expresarse. El 1 de noviembre siguiente[19] se cumplió con lo ordenado, por lo que nos damos por cumplidos.

Además, el 10 de octubre de 2023, emitimos una *Resolución* otorgando igual término a Five Development Corporation para responder al recurso instado por el BPPR. El 21 de noviembre también se cumplió con lo ordenado por lo que nos damos por cumplidos.[20]

En atención al cumplimiento de las partes con lo requerido, decretamos perfeccionado los recursos.

---

[19] El Banco junto con su alegato en oposición acompañó una *Moción Solicitando Autorización para Exceder el Número de Páginas …*, la cual declaramos *Con Lugar*.
[20] Precisa advertir que los apelantes aún cuando discutieron de manera somera el error señalado por el Banco en el KLAN2302300893 usaron gran parte de su *Alegato en Oposición* para incluir y discutir asuntos del KLAN202300878 instado por ellos. Por lo que, determinamos que todos los argumentos que no estén relacionados con el error plasmado en el KLAN2302300893 serán obviados en el análisis del escrito.

Analizados las comparecencias de las partes y los expedientes apelativos; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**La sentencia dictada sumariamente**

En nuestro ordenamiento, el mecanismo de la sentencia sumaria está gobernado por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, la cual autoriza a los tribunales a dictar sentencia de forma sumaria si mediante declaraciones juradas u otro tipo de prueba se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Más específicamente, la Regla 36.1, 32 LPRA Ap. V, R. 36.1, atiende la solicitud de este tipo de disposición a favor de la parte reclamante en un pleito, mientras que la Regla 36.2, 32 LPRA Ap. V, R. 36.2, permite su petición a favor de la parte contra la que se reclama. En ambas reglas se establece lo siguiente:

> **Regla 36.1. A favor de la parte reclamante**
>
> Una parte que solicite un remedio podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.
>
> **Regla 36.2. A favor de la parte contra quien se reclama**
>
> Una parte contra la cual se haya formulado una reclamación podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3, 32 LPRA Ap. V, R. 36.3., dispone los requisitos de contenido de la moción de sentencia sumaria y de la contestación a esta, entre otras particularidades del procedimiento. Estos requisitos, como los párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay

controversia sustancial, no son un mero formalismo, ni constituye un simple requisito mecánico sin sentido. *SLG Zapata-Rivera v. JF Montalvo,* 189 DPR 414, 434 (2013).

En un primer plano, mediante el uso del mecanismo discrecional de la sentencia sumaria, se aligera la tramitación de un caso, puesto que, ante la ausencia de controversia de hechos, al tribunal solo le corresponde aplicar el derecho. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014). Así, sirve para propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no requieren la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una o varias controversias de derecho. *Íd.*

Este tipo de resolución procede en aquellos casos en los que no existen controversias **reales y sustanciales** en cuanto a los **hechos materiales** y, por lo tanto, lo único que resta es aplicar el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). La precitada Regla 36 de las de Procedimiento Civil, *supra,* dispone, en esencia, que para permitir este tipo de adjudicación resulta necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia, surja que no existe controversia real y sustancial respecto a ningún hecho esencial y pertinente; y en adición, que se deba dictar sentencia sumaria como cuestión de derecho. *Íd.* En este sentido, solo procede dictarla cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y que el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.,* a las págs. 109-110.

Es decir, por un lado, al promovente de la moción le toca establecer su derecho con claridad y demostrar que no existe

controversia en cuanto a ningún hecho material, o sea ningún componente de la causa de acción. *Íd.*, a la pág. 110. Por el otro, <u>al oponente le corresponde establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria</u>. *Íd.* Cabe recordar que, en este contexto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Íd.* Más específicamente, el oponente <u>debe controvertir la prueba presentada y no debe cruzarse de brazos</u>, pues de lo contrario se expone a que se acoja la solicitud de sentencia sumaria y se le dicte en contra. *Ramos Pérez v. Univisión,* 178 DPR 200, 214-215 (2010). Esto significa que <u>está obligado a contestar de forma detallada y específica aquellos hechos pertinentes que demuestran la existencia de una controversia real y sustancial que requiere dilucidarse en un juicio</u>. *Íd.* a la pág. 215. En este ejercicio, debe presentar declaraciones juradas o documentos que pongan en controversia los hechos alegados por el promovente, <u>recordando que tampoco puede descansar en meras alegaciones, sino que debe proveer evidencia sustancial de los hechos materiales en disputa</u>. *Íd.*

No obstante lo anterior, no oponerse a la solicitud de sentencia sumaria no implica ni que procederá dictarla obligatoriamente, si existe una controversia legítima sobre un hecho material, ni que corresponderá dictarla a favor de su proponente si no procede en derecho. *Íd.*

Ahora bien, se han establecido ciertas reglas limitantes de la discreción en el uso de la moción de sentencia sumaria. Por un lado, la determinación en cuanto a esta debe guiarse por un principio de liberalidad a favor de la parte que se opone, lo cual persigue evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben

ser resueltas. *Íd.* a las págs. 216-217. Por el otro, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de derecho no procede. *Oriental Bank v. Perapi, supra* a las págs. 26-27. Dicho esto, cabe indicar que la moción de sentencia sumaria no está excluida en ningún tipo de pleito, puesto que, sin importar cuán complejo sea un pleito, puede dictarse si de una moción de sentencia sumaria bien fundamentada surge que no hay controversia sobre hechos materiales. *Meléndez González et al. v. M. Cuebas, supra* a la pág. 112.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal de Primera Instancia**. *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 115. En *Meléndez González,* el Tribunal Supremo atemperó este estándar a las exigencias de las nuevas Reglas de Procedimiento Civil y a lo que ya había establecido hace una década en *Vera v. Dr. Bravo,* 161 DPR 308, 334-335 (2004). Así las cosas, consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra,* a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia **y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo**. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte

que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición **cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civi**l, supra, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones **debe revisar si en realidad existen hechos materiales en controversia**. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

**Teoría general de los contratos**[21]

En Puerto Rico rige el principio de libertad de contratación según el cual los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre y cuando no sean contrarios a las leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil ed. 1930 (derogado), 31 LPRA sec. 3372.[22] Una vez median los elementos de **consentimiento, objeto y causa** necesarios para la existencia de un contrato, **este se convierte en la ley que rige entre las partes**. Artículos 1044 y 1213, *supra*, 31 LPRA secs. 2994 y 3391.[23] Además, serán obligatorios, cualquiera que sea la forma en que se haya celebrado,

---

[21] Destacamos que mediante la Ley núm. 55-2020 se aprobó el nuevo Código Civil de Puerto Rico. No obstante, los hechos del caso tienen su génesis en momentos previos a la vigencia del nuevo cuerpo legal. Por lo que, procede la aplicación de las disposiciones del derogado Código Civil de 1930.

[22] Véase el Artículo 1232 del Código Civil de 2020, 31 LPRA sec. 9753.

[23] Véase el Artículo 1233 y 1237 del Código Civil de 2020, 31 LPRA sec. 9754 y 9771.

siempre que en ellos concurran las condiciones esenciales para su validez. Artículo 1230, *supra*, 31 LPRA sec. 3451.[24]

En cuanto a los elementos de objeto y causa destacamos que en nuestro ordenamiento jurídico: (1) pueden ser objeto de contrato todas las cosas que no están fuera del comercio de los hombres, aun las futuras, y (2) la causa se define como la motivación y la razón que tienen las partes al momento de contratar. Es decir, es la razón que explica y justifica la creación de la obligación. José Ramón Vélez Torres, *Curso de Derecho Civil; Derechos de Contrato*, 1ra ed., San Juan, Revista Jurídica Facultad de Derecho Universidad Interamericana de Puerto Rico, 1990, T. IV, Vol. II, pág. 72.

De otra parte, cuando se perfecciona un contrato, las partes contratantes vienen obligadas con lo expresamente pactado, y de incurrir en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responden por los daños y perjuicios causados. Artículos 1054 y 1210, *supra*, 31 LPRA secs. 3018 y 3375.[25]

*Vicio en el consentimiento*

Los contratos que adolezcan de cualquiera de los vicios que invalidan alguno de los requisitos esenciales para su validez podrán ser anulados. Artículo 1252 del Código Civil ed. 1930 (derogado), 31 LPRA sec. 3511.[26] El Artículo 1217, *supra*, 31 LPRA sec. 3404, establece que será nulo el consentimiento prestado por error, violencia, intimidación o dolo.[27] Habrá dolo cuando con palabras o con maquinaciones insidiosas de parte de uno de los contratantes, el otro es inducido a celebrar un contrato que, sin ellas, no hubiera hecho. Artículo 1221, *supra*, 31 LPRA sec. 3408.[28]

---

[24] Véase el Artículo 1231 y 1232 del Código Civil de 2020, 31 LPRA sec. 9752 y 9753.

[25] Véase el Artículo 1158 del Código Civil de 2020, 31 LPRA sec. 9303.

[26] Véase el Artículo 342 del Código Civil de 2020, 31 LPRA sec. 6312.

[27] Véase el Artículo 285 del Código Civil de 2020, 31 LPR. sec. 6191.

[28] Véase el Artículo 292 del Código Civil de 2020, 31 LPRA sec. 6211; Artículo 294, *supra*, 31 LPRA sec. 6213.

La figura del dolo contractual tiene dos aplicaciones fundamentales. En la primera aplicación, se provoca la anulabilidad del contrato por vicio en el consentimiento en el origen del contrato, cuando éste se obtiene a través de maquinaciones insidiosas. Incluye el engaño, el fraude, la falsa representación y la influencia indebida, entre otras. *Márquez v. Torres Campos*, 111 DPR 854, 863 (1982). Su otra aplicación consiste en el dolo contractual que ocurre en el curso de la consumación del contrato. *Íd.*

No todo tipo de dolo produce la nulidad del contrato. Para que produzca la nulidad, el dolo debe ser grave ("dolo causante"). *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997). Dolo grave es aquel que inspira y persuade a contratar, y sin el cual no hubiese habido contratación. *Íd.* Por su parte, el "dolo incidental" no produce la nulidad del contrato, ya que éste no tiene una influencia decisiva en la esencia de la obligación. "Sin éste, el contrato de todas formas se hubiera celebrado, pero no bajo las mismas condiciones." *Íd.* En esos casos, existe la voluntad de contratar, pero hay engaño en el modo en que se celebra el contrato. Este tipo de dolo no provoca la nulidad del contrato y **sólo da lugar a que el perjudicado sea resarcido en daños y perjuicios**. *Íd.*, a las págs. 667-668.

Corresponde al que reclama la conducta dolosa la responsabilidad de la prueba. *Íd.*, a la pág. 668. Véase, *Canales v. Pan American*, 112 DPR 329, 340 (1982). El dolo no se presume. Sin embargo, puede establecerse mediante inferencia o por evidencia circunstancial. *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 669.

*Cláusulas de liberación de responsabilidad*

Nuestro alta *Curia* ha resuelto que, salvo que esté prohibido por ley, las partes contratantes pueden negociar el alcance de los acuerdos de indemnización o relevo de responsabilidad. "Así, y a diferencia de la responsabilidad extracontractual, los detalles y las

circunstancias en las que se activará y será exigible la responsabilidad contractual dependerán del lenguaje específico que acuerden las partes. *Bainville v. Hess Oil VI. Corp.*, 837 F.2d 128, 130-131 (3er Cir. 1988)." *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 13 (2015). En lo aquí pertinente, el Artículo 4 del Código Civil, aplicable a los hechos del presente caso, 31 LPRA sec. 4, dispone que "[l]os derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero."[29] Ahora bien, "[l]a renuncia debe ser clara, terminante e inequívoca, más aún, cuando se exonere de responsabilidad a una persona por sus futuros actos negligentes. [citas omitidas]." *Torres Solís et. al. v. A.E.E. et. als.*, 136 DPR 302, 314-315 (1994).

En conclusión, en aquellos casos en donde la intención de las partes surja claramente de los términos del acuerdo, "los tribunales la aplicarán a menos que sean contrarias al interés público". [Cita omitida]. *Torres Solís et al. v. A.E.E. et als.*, supra, a la pág. 314. En cambio, cuando no sea posible determinar la intención de las partes de una lectura de los términos pactados, será necesario entonces recurrir a las normas dispuestas en el Artículo 1234 del Código Civil ed. 1930, 31 LPRA 3472 que dispone que "[p]ara juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato."

Por último, cuando se trata de la asunción del riesgo por acuerdo o por contrato, se exige que se establezca en el contrato con cláusula o disposición donde claramente se demuestre que el demandante estaba consciente de su renuncia a reclamar al demandado o debía estar razonablemente consciente de ello y que así lo aceptó. Al evaluar este tipo de acuerdo se debe determinar si

---

[29] Véase el Artículo 14 del Código Civil de 2020, 31 LPRA sec. 5333.

el poder de negociación entre las partes contratantes era razonablemente parejo. *Chico v. Editorial Ponce,* 101 DPR 759, 779 (1973); *Torres Solís et. al. v. A.E.E. et. als.,* supra, a la pág. 315. Cuando resulta evidente que el demandante no tuvo otra alternativa que firmar el contrato con la cláusula de exoneración de responsabilidad que se incluyó en el mismo, esta defensa no debe prevalecer. Tampoco aplica esta defensa si el convenio es contrario a la política pública de la jurisdicción. Brau del Toro, Herminio, *Los Daños y Perjuicio Extracontractuales en Puerto Rico,* Publicaciones J.T.S., Segunda Ed. 1986, pág. 409.

**III.**

Los apelantes, en esencia, plantearon que erró el TPI al resolver el caso por la vía sumaria obviando un dictamen anterior y al no tomar en consideración que se hace necesario celebrar un juicio plenario para aquilatar prueba de elementos subjetivos de intención y propósitos mentales, así como la disparidad en la fuerza de negociación entre las partes. Arguyeron, además, que el foro primario no tomó en consideración los hechos que surgen de la Declaración Jurada y del informe pericial que presentaron en sus mociones. Además, señalaron que el foro apelado actuó incorrectamente en su proceder al aplicar una cláusula de relevo que no aplica en casos de negligencia crasa y conducta intencional.

Por su parte, el Banco argumentó que el TPI erró al no desestimar las primera y segunda causas de acción, acorde con los fundamentos expuestos en su petitorio sumario.

De entrada, colegimos que las partes cumplieron sustancialmente con las formalidades dispuestas en la Regla 36 de las de Procedimiento Civil, *supra.* Por lo que, el TPI podía resolver por la vía abreviada. Además, para una mejor comprensión de nuestra resolución, atenderemos los recursos por separado.

**KLAN202300878**

Como reseñamos, los apelantes han reiterado en múltiples ocasiones, inclusive ante nos, que el TPI no debió resolver el caso por la vía sumaria debido a que el tribunal necesita aquilatar prueba referente a <u>elementos subjetivos de intención y propósitos mentales,</u> así como la <u>disparidad en la fuerza de negociación entre las partes</u>. Por estar los errores relacionados entre sí, los discutiremos en conjunto.

Como bien razonó el foro *a quo* el lenguaje de las cláusulas de relevo en los distintos documentos de préstamo es **uno claro, libre de ambigüedad, válido y exigible**. De estas surge claramente, que desde el 2013, con la firma del "*Amended and Restated Credit Agreement*" los apelantes han relevado al Banco de responsabilidad por controversias, daños, reclamos y causa de acción resultantes o relacionados con los acuerdos otorgados.[30] Asimismo, en las posteriores enmiendas los apelantes reafirmaron no tener una reclamación o defensa en contra del BPPR, y renunciaron reiteradamente a cualquier causa de acción en contra de dicha institución bancaria. Según indicamos, en nuestro estado de derecho cuando la intención de las partes surge claramente de los términos del acuerdo, los tribunales debemos aplicar la cláusula de relevo de responsabilidad a menos que sean contrarias al interés público. Sin duda, en el caso de autos las cláusulas, reiteradas en todos los documentos otorgados por los apelantes, no son contrarias al interés público.

---

[30] La Sección 2.1 inciso (d) del *Amended and Restated Credit Agreement* dispone: Los Prestatarios reconocen y aceptan que a la fecha del presente contrato, no tienen defensas, compensaciones, reclamos o contrademandas de ninguna naturaleza, ya sea liquidados o no liquidados, vencidos o no vencidos, conocidos o desconocidos, directos o indirecta, contra BPPR que están o pueden estar directa o indirectamente relacionados a los Anticipos Existentes o al reembolso de los mismos, y todos y cada uno de dichas defensas, compensaciones, reclamaciones y reconvenciones quedan expresamente renunciadas y liberadas para siempre por los Prestatarios. Véase el Apéndice del Recurso, a la pág. 108.

Más aún, debemos enfatizar que los apelantes en la *Oposición a: "Moción de Sentencia Sumaria Parcial" o en la Alternativa, para que se Posponga su Consideración en Virtud de la Regla 36.6 de las de Procedimiento Civil* expresaron diáfanamente que: "Es preciso destacar que los documentos dicen lo que dicen...". Por tanto, **nunca estuvo en controversia el lenguaje ni el alcance de las cláusulas de relevo**. En este sentido, tampoco podemos avalar la intención de los apelantes en pretender, por primera vez en el cuarto error, cuestionar el efecto de la cláusula 8 del *Acuerdo de Moratoria* (*Moratorium, Forbeance and Amendment Agreement*). Esto, como vimos al haber aceptado, en todo momento, durante el desarrollo del caso, el contenido de la cláusulas de relevo que ahora intentan interpretar a su favor en una tergiversación de lo allí acordado.[31] Así también, los apelantes pasan por alto que en el referido *Acuerdo de Moratoria* estos reconocieron, en la Cláusula 12 intitulada *Reaffirmation of Loan Documents*, haber revisado los términos y condiciones, que los ratificaban y se reafirmaban en todos y los pactos contenidos en cada uno de los documentos de préstamo. A su vez, estos reiteraron que los términos, disposiciones y acuerdos continuarían en pleno vigor y efecto según escrito en los contratos.

De otro lado, el foro apelado advirtió que los apelantes aceptaron que <u>contaron con asistencia y orientación legal en el proceso de otorgar todos los acuerdos con el Banco</u>. Dicho hecho no fue refutado en el escrito de apelación. Al respecto, como bien pronunció el TPI en la *Sentencia Parcial* apelada, de las Secciones 10.12 y 10.18 del "*Amended and Restated Credit Agreement*" surge claramente que los apelantes suscribieron dicho contrato contando

---

[31] La Cláusula Octava de la moratoria claramente dispone que "... excepto en la medida en que dichos reclamos, responsabilidades, obligaciones, deudas, causas de acción, defensas, reconvenciones y demandas **se encuentren en una sentencia final e inapelable** dictada por un tribunal de jurisdicción competente como resultado de negligencia grave o mala conducta intencional del liberador aplicable."

con la participación **de un abogado tanto en el proceso de negociación de los términos, como en la preparación del mismo.** De igual manera, declararon haber suscrito el acuerdo de manera **consciente, libre, voluntaria y con claro entendimiento de sus cláusulas**.[32] Además, puntualizamos que en la Sección 10.12 se declaró que cada parte tuvo la oportunidad de revisar y analizar este acuerdo "por un período de tiempo suficiente" antes de la ejecución y entrega. Incluso, se expresó que el contrato y los documentos del préstamo fueron preparados y ejecutados sin fraude, coacción, influencia indebida o coerción de ningún tipo ejercida por cualquiera de las partes sobre las demás; y que la ejecución y entrega del *Amended and Restated Credit Agreement* era un acto libre y voluntario por cada una de las partes otorgantes.[33] Por ende, es un hecho incontrovertido que la renuncia fue clara, terminante e inequívoca.

Por otra parte, entendió el TPI que los apelantes no prevalecieron en su contención de que tuvieron que doblegarse ante el Banco y aceptar las exigencias de las cláusulas en contra de su voluntad. Concluyó el foro apelado que no surge disparidad de fuerzas debido a que ellos son un grupo comercialmente sofisticado que se dedica al arrendamiento de inmuebles. Al respecto, destacamos que los apelantes aceptaron como un hecho incontrovertido que "se dedican a actividades comerciales y arrendamiento de propiedades comerciales y son entidades o personas empresariales."[34] Más aún, estos alegaron en la demanda haberse reunido directamente con el Sr. Richard Carrión, entonces principal ejecutivo del BPPR, y haber suscrito los documentos con el beneficio de asesoría legal, como ya hemos explicado.

---

[32] Véase el Apéndice del Recurso, a las págs. 169-171, y Determinación de Hechos núm. 17.
[33] Véase el Apéndice del Recurso, a la pág. 169, y Determinaciones de Hechos núm. 18 y 19.
[34] Véase el Apéndice del Recurso, a las págs. 322 y 423.

Nuevamente advertimos que los apelantes, en su recurso, no han logrado refutar estas realidades fácticas las cuales están debidamente fundamentadas en la evidencia y en las determinaciones de hechos incontrovertidos formulados por el TPI. Los apelantes no solo consintieron y firmaron el *Amended and Restated Credit Agreement* el 13 de diciembre de 2013, sino que, además, y con posterioridad **firmaron y consintieron** el *First Amenment to Amended and Restated Credit Agreement and Other Loan Documents* del 3 de octubre de 2014, el *Second Amendment to Amended and Restated Credit Agreement and Other Loan Documents* del 22 de enero de 2015, el *Forbearance agreement and Third Amendment to Credit Agreement* del 18 de octubre de 2016 y el *Moratorium Forbearance and Amendment Agreement* del 23 de octubre de 2017. Destacamos que, en todos los documentos, los apelantes declararon no tener ninguna reclamación en contra del Banco y reconocieron como válidos los acuerdos suscritos entre las partes.

Respecto al planteamiento de que el foro revisado no consideró la Declaración Jurada suscrita por los señores Pérez Matos y Pérez Díaz, ni el informe pericial, solo tenemos que apuntalar que **en ninguno de estos documentos se refutan los hechos materiales** plasmados por el tribunal *a quo* en el dictamen apelado. En especial, en ninguno de estos encontramos, ni aún en el escrito de apelación, una elaboración de un argumento en derecho para impugnar el hecho de que los apelantes contaron con asesoría legal tanto en el proceso de negociación como en el de redacción de los acuerdos. Incluso, la referida declaración jurada solo contiene las mismas alegaciones vertidas en la demanda. Las alegaciones no hacen prueba, por lo cual estos estaban obligados a presentar prueba que controvirtiera la presentada por el Banco. Reiteramos la normativa procesal que imponía en los apelantes el deber de presentar

evidencia sustancial que controvirtiera los hechos propuestos por la institución financiera.

A manera ilustrativa, destacamos que los apelantes solo reclaman que el Banco los coaccionó y presionó para alcanzar un nuevo acuerdo, a pesar de que el préstamo otorgado por el extinto Westernbank, al .34% de interés anual y a un término de 37 años, estaba al día. Los apelantes ni tan siguiera demostraron, ni presentaron argumentos en derechos que nos lleven a concluir que el Banco estaba obligado a honrar los mismos términos de los contratos de préstamo otorgados por el Westernbank. Por otro lado, los apelantes reiteraron en cada documento entender las consecuencias o la magnitud de lo acordado. Lo que, sin lugar a dudas despeja cualquier planteamiento relativo a que los ejecutivos del Banco los presionaron indebidamente o coaccionaron para firmar los documentos de préstamo de la reestructuración de la deuda. Incluso, precisa enfatizar que ninguna de las personas que proveyeron dicha asesoría legal son parte en el presente pleito. Conforme señalamos en el derecho aplicable, el que reclama una conducta dolosa tiene la responsabilidad de presentar prueba.

Por último, los apelantes argumentan que el TPI emitió un dictamen sumario en contra de lo resuelto en la *Resolución* dictada el 10 de septiembre de 2021, y la cual fue objeto de revisión ante este foro intermedio en el recurso denominado alfanuméricamente como KLCE202101240. Mediante el referido dictamen, el TPI declaró *no ha lugar* a la solicitud de desestimación instada por el Banco al amparo de la Regla 10.2 de las de Procedimiento Civil. Recalcamos que el hermano Panel determinó denegar el referido recurso de *certiorari* por lo que ello no constituye una adjudicación en los méritos de la controversia, ni menos se puede considerar como la Ley del Caso. Además, acentuamos vehementemente que, de la lectura minuciosa de la antedicha *Resolución,* no surge que el foro

primario haya resuelto que se hacía necesario la celebración de un juicio plenario para adjudicar los elementos subjetivos de intención y propósitos mentales, según fue formulado por los apelantes en el primer error.

En consecuencia, resolvemos que no existen hechos materiales en controversia que impidieran el proceder del TPI por lo que los errores señalados no se cometieron.

**KLAN202300893**

El Banco solo le imputó en su recurso al foro primario, el haber errado al no desestimar la primera y segunda causa de acción según le fue peticionado en la moción de sentencia sumaria. Argumentó que, ambas causas de acción están relacionadas con la reestructuración de la deuda ocurrida en el 2013, eventos cubiertos por los relevos y renuncias firmados por los apelantes.

En este particular, coincidimos totalmente con los argumentos incluidos en la *Oposición a Moción de Reconsideración Parcial* presentada por los apelantes-apelados ante el TPI.[35] Esto, debido a que como allí se señaló y reafirmó el foro primario en la *Sentencia Parcial* apelada, dichas dos causas de acción, según incluidas en la demanda, **contienen alegaciones que se remontan a hechos posteriores** a la firma del *Acuerdo de Moratoria* suscrito el 23 de octubre de 2017. A manera ilustrativa refiérase a las alegaciones 104 y 105 de la primera causa de acción, y las alegaciones 107 y 109 de la segunda causa de acción, donde en esencia, se alega que el Banco actuó de manera ilegal y contrario a los intereses de los apelantes al vender a sus espaldas los préstamos a Condado 6, LLC.[36]

---

[35] Véase el Apéndice del Recurso KLAN2300878, a las págs. 810-813. Véase, además, la *Demanda, Íd.*, a las págs. 26-29.

[36] La Primera Causa de acción fue intitulada- Actos ilícitos, dolo y maquinaciones insidiosas del Banco; y la Segunda- Coerción "Duress" Económica.

A su vez, coincidimos con lo expresado por el foro apelado "en que la renuncia a reclamar por acciones relacionadas con el cumplimiento de las obligaciones prestatarias no es sinónimo de una renuncia a reclamar por cualquier responsabilidad que pudo generar la venta de los préstamos a un tercero."[37] Recordemos, además, que la venta de los préstamos por el BPPR a Condado 6, LLC se realizó el 31 de julio de 2019, lo que implica que a dicha fecha no estaban vigentes las mencionadas cláusulas de relevo.

Por último, no obviemos que en la réplica a la oposición a la moción de sentencia sumaria parcial, instada por los apelantes-apelados, el Banco afirmó claramente que no se solicitó en su petitorio sumario que las renuncias se apliquen en la forma de relevos por *conducta dolosa futura*. Al respecto, apuntaló que "solicita en estos momentos hacer efectivas las renuncias que los Demandantes firmaron sobre cualquier reclamación a base de hechos que ocurriesen en o antes de la firma del *Contrato de Préstamo Enmendado* y sus enmiendas- es decir, en torno a actos *previos o contemporáneos* a la firma de estos."[38]

En fin, el TPI no incurrió en el error señalado.

## IV.

Por los fundamentos antes expuestos, procedemos a confirmar la *Sentencia Parcial* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[37] Véase el Apéndice del Recurso, a la pág. 739.
[38] Véase, nota al calce 15.